BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

BARRACK, RODOS & BACINE
A. ARNOLD GERSHON
agershon@barrack.com
GLORIA K. MELWANI
gmelwani@barrack.com
1350 Broadway, Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Counsel for Plaintiff*

FILED
2010 AUG 16 P 3:42
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. S.J.

ADR
E-filing
BY FAX

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS LEVINE, Derivatively on Behalf of HEWLETT–PACKARD COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MARC L. ANDREESSEN, LAWRENCE T. BABBIO, Jr., RAJIV L. GUPTA, JOHN H. HAMMERGREN, MARK V. HURD, JOEL Z. HYATT, JOHN R. JOYCE, ROBERT L. RYAN, LUCILLE S. SALHANY, and G. KENNEDY THOMPSON,<br><br>Defendants,<br><br>–and–<br><br>HEWLETT-PACKARD COMPANY, a Delaware Corporation,<br><br>Nominal Defendant. | Case No. CV10-03608 PVT<br><br>SHAREHOLDER DERIVATIVE COMPLAINT FOR WASTE OF CORPORATE ASSETS<br><br>DEMAND FOR JURY TRIAL |

SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

1. Louis Levine, a stockholder of Hewlett-Packard Company ("HP" or the "Company") hereby brings this shareholders derivative action on behalf of HP in order to remedy the waste of corporate assets by the Board of Directors of HP (the "Board") arising from the Board's decision to approve an agreement between HP and defendant Mark V. Hurd ("Hurd") pursuant to which Mr. Hurd was granted substantial compensation without consideration.

2. HP designs, manufactures and sells a broad range of technology products to consumers, businesses and government agencies. HP stock is publicly traded on the New York Stock Exchange. As of April 30, 2010, there were more than 2.3 billion shares of HP stock outstanding. In 2005, Mr. Hurd was appointed President of HP, Chairman of the Board and Chief Executive Officer. Mr. Hurd maintained those positions until August 6, 2010 when HP abruptly announced his resignation. Mr. Hurd's resignation followed an investigation authorized by the Board of sexual harassment claims against Mr. Hurd. In a statement released on August 6, 2010, Mr. Hurd acknowledged that "I did not live up to the standards and principles of trust, respect and integrity that I have espoused at HP" and stated that, under the circumstances, it would be "difficult" for him "to continue as an effective leader at HP." Upon his resignation, and pursuant to a separation agreement with Mr. Hurd (the "Hurd Agreement"), HP paid Mr. Hurd approximately $40 million in cash, stock and stock options. As set forth below, any consideration given to HP by Mr. Hurd in exchange for this cash, stock and stock options was illusory and the payment to Mr. Hurd constitutes a waste of corporate assets by the Board.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of costs and interest, and each defendant named herein is a citizen of a state that is different than that of the plaintiff.

4. Venue is also proper in this District pursuant to 28 U.S.C. §1391 because, among other reasons, HP is located in this district, several defendants reside in this district and a substantial part of the acts complained of herein occurred in this district.

1 – SHAREHOLDER DERIVATIVE COMPLAINT

## PARTIES

5. Plaintiff Louis Levine is a citizen of New Jersey. Mr. Levine was a stockholder of HP at the time of the challenged transactions, is currently a stockholder in HP and intends to remain a stockholder for the duration of this litigation.

6. Defendant Lawrence T. Babbio, Jr. ("Babbio"), is a citizen of the state of New York and has been a member of the Board since 2002. Mr. Babbio is a member of the Finance and Investment Committee, Nominating and Governance Committee and HR and Compensation Committee.

7. Defendant Rajiv L. Gupta ("Gupta"), is a citizen Pennsylvania and has been a member of the Board since 2009. Mr. Gupta is a member of the HR and Compensation Committee, Public Policy Committee and Technology Committee.

8. Defendant John H. Hammergren ("Hammergren"), is a citizen of New Hampshire and has been a member of the Board since 2005. Mr. Hammergren is a member of the Finance and Investment Committee and the HR and Compensation Committee.

9. Defendant Mark V. Hurd ("Hurd"), is a citizen of California and has been a member of the Board since 2005. Between May 1, 2005 and August 6, 2010, Mr. Hurd was President, Chairman and CEO of HP. At the time he executed the Hurd Agreement, Mr. Hurd was Chairman, CEO and President of HP.

10. Defendant Joel Z. Hyatt ("Hyatt"), is a citizen of California and has been a member of the Board since 2007. Mr. Hyatt is a member of the Finance and Investment Committee, HR and Compensation Committee and Public Policy Committee.

11. Defendant John R. Joyce ("Joyce"), is a citizen of Connecticut and has been a member of the Board since 2007. Mr. Joyce is a member of the Audit Committee and Technology Committee.

12. Defendant Robert L. Ryan ("Ryan"), is a citizen of California and has been a member of the Board since 2004. Mr. Ryan is a member of the Audit Committee, Public Policy Committee and Technology Committee.

13. Defendant Lucille S. Salhany ("Salhany"), is a citizen Massachusetts and has been a member of the Board since 2002. Ms. Salhany is a member of the Nominating and Governance Committee, Audit Committee and HR and Compensation Committee.

14. Defendant G. Kennedy Thompson ("Thompson"), is citizen of North Carolina and has been a member of the Board since 2006. Mr. Thompson is a member of the Finance and Investment Committee, Nominating and Governance Committee and Audit Committee.

15. Defendant Marc L. Andreessen ("Andreessen"), is citizen of California and has been a member of the Board since 2009. Mr. Andreessen is a member of the Public Policy Committee and the Technology Committee.

16. Nominal defendant Hewlett-Packard Company is a Delaware corporation with its principal place of business and executive offices located at 3000 Hanover Street Palo Alto, California.

## STATEMENT OF FACTS

17. On August 6, 2010, HP filed a Form 8-K with the United States Securities Exchange Commission announcing that, effective immediately, Mr. Hurd was resigning his position on the Board as well as his positions as Chief Executive Officer and President of HP. In Mr. Hurd's place, the Board voted to appoint Catherine A. Lesjak, then HP's Chief Financial Officer, as HP's interim CEO and further voted to form a search committee for a permanent CEO comprised of directors Marc L. Andreessen, Lawrence T. Babbio, Jr., John H. Hammergren and Joel Z. Hyatt.

18. In announcing his resignation, Hurd acknowledged that "there were instances in which I did not live up to the standards and principles of trust, respect and integrity that I have espoused at HP. . . ." and that, as a result Hurd believed "it would be difficult for me to continue as an effective leader at HP . . . ."

19. HP simultaneously announced that the Company had entered into the Hurd Agreement. The Hurd Agreement was approved by the Board on or around August 6, 2010. Pursuant to the Hurd Agreement, the Company agreed, *inter alia*, to provide Mr. Hurd the following compensation and benefits:

- A cash payment of $12,224,693;
- An extension, to September 7, 2010, of the expiration date for outstanding options to purchase 775,000 shares of HP common stock;
- Pro-rata vesting and settlement, at the same time and on the same terms as other HP employees, of 330,177 performance-based restricted stock

units granted to Mr. Hurd on January 17, 2008 relating to HP's performance in the three-year period ending on October 31, 2010; and

- Settlement, on December 11, 2010, of 15,853 time-based restricted stock units granted to Mr. Hurd on December 11, 2009 at a price equal to the lesser of (a) the closing price of HP's common stock on August 6, 2010 or (b) the per share closing trading price of HP common stock on December 11, 2010.

20. According to the Company's 8-K, the aforementioned benefits were provided to Mr. Hurd "in exchange for signing a general release of claims in favor of HP."

21. The Hurd Agreement constituted a material change to the compensation and benefits due to Mr. Hurd pursuant to his then-current employment agreement with HP.

22. As set forth in HP's 2010 Proxy Statement, filed with the United States Securities Exchange Commission on January 27, 2010, there was a substantial and material difference in the compensation, in cash, stock and stock options, available to Mr. Hurd in the event of his resignation than would be available to him in the event that he was terminated without cause by the Board:

| Name | Termination Scenario | Total ($) | Severance ($) | Stock Options ($) | Restricted Stock ($) | PRU Program ($) |
|---|---|---|---|---|---|---|
| Mark V. Hurd | Voluntary/ For Cause | 0 | 0 | 0 | 0 | 0 |
| | Disability | 27,290,766 | — | 2,773,500 | 7,808,404 | 16,708,862 |
| | Retirement | — | — | — | — | — |
| | Death | 21,159,242 | — | 2,773,500 | 5,676,880 | 16,708,862 |
| | Not for Cause | 52,950,237 | 11,644,693 | 2,773,500 | 7,808,404 | 30,723,640 |
| | Change in Control | 52,950,237 | 11,644,693 | 2,773,500 | 7,808,404 | 30,723,640 |

23. According to HP's 2010 Proxy Statement, upon his voluntary resignation, Mr. Hurd was not eligible for a cash severance payment, was not eligible for awards of stock options or restricted stock, and Mr. Hurd was not eligible for performance share ownership

4 – SHAREHOLDER DERIVATIVE COMPLAINT

demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent.

29. Pursuant to the Hurd Agreement, Mr. Hurd received tens of millions of dollars in cash, stock and stock options which he would not otherwise have been eligible to receive under the terms of his employment contract. In exchange, HP received no valuable consideration. By agreeing to the terms of the Hurd Agreement, the Board has committed waste in the matter of executive pay. Waste is egregious misconduct that is not protected by the business judgment rule, and it provides an excuse for not making demand. Waste is transfer of corporate assets for no consideration at all or for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade. The Hurd Agreement meets the definition of Waste.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS FOR CORPORATE WASTE BY APPROVING THE HURD AGREEMENT

30. Plaintiff repeats and realleges each and every allegation set forth above as if set forth fully herein.

31. The Board owed and owes to HP an obligation to protect HP's assets from loss or waste.

32. As set forth above, by any objective assessment, the payments made to defendant Hurd are supported by no consideration at all or are for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.

33. By approving and agreeing to the Hurd Agreement, the Board's committed a waste of HP's assets and the Board's actions were grossly unfair to HP. By agreeing to transfer assets to defendant Hurd for illusory or non-existent consideration, the Board wasted and squandered HP's assets. No reasonable person could conclude that the Board's decision to approve these payments represented a fair or reasonable exchange.

34. HP has sustained, and will continue to sustain, serious damage and irreparable injury for which relief is sought herein.

35. Defendant Hurd breached his fiduciary duty of loyalty by accepting these benefits.

36. Plaintiff has no adequate remedy at law for the wasteful and wrongful conduct engaged in by the Board.

**PRAYER FOR RELIEF**

37. Wherefore plaintiff, on behalf of HP, demands judgment as follows:

A. An accounting, including disgorgement and other monetary relief, for all of HP's losses and expenses;

B. An award to plaintiff for the costs and disbursements of this action, including a reasonable allowance for the plaintiff's attorneys' and experts' fees, costs and expenses; and

C. For such other and further relief as the Court may deem just and proper, whether similar or different.

DATED: August 16, 2010

Respectfully submitted,

BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
SAMUEL M. WARD (216562)

_____
SAMUEL M. WARD

One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874

A. Arnold Gershon
Gloria K. Melwani
1350 Broadway, Suite 1001
New York, NY 10018
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Counsel for Plaintiff*

**VERIFICATION**

I, Louis Levine, hereby verify that I have reviewed the shareholder derivative complaint, authorize its filing on my behalf and verify that the facts set forth in the shareholder derivative complaint are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

DATE: Aug 16, 2010

*Louis Levine* [signature]

Louis Levine

SHAREHOLDER DERIVATIVE COMPLAINT