**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE HP DERIVATIVE LITIGTION | Case No.: 5:10-cv-3608 EJD |
| | **ORDER GRANTING MOTIONS TO DISMISS** |
| | (Re: Docket Nos. 99, 102, 103) |

Presently before the court are three motions filed by Defendants to dismiss Plaintiffs Louis Levine, Teamster Union Local # 142 Pension Trust, Key West Police & Fire Pension Fund, and Louisiana Municipal Police Employees Retirement System's (collectively, "Plaintiffs") complaint. Defendants are Marc L. Andreessen, Lawrence T. Babbio ("Babbio"), Sari M. Bauldauf ("Bauldauf"), Rajiv L. Gupta ("Gupta"), John H. Hammergren ("Hammergren"), Mark V. Hurd ("Hurd"), Joel Z. Hyatt ("Hyatt"), John R. Joyce ("Joyce"), Robert L. Ryan ("Ryan"), Lucille S. Salhany ("Salhany"), G. Kennedy Thompson ("Thompson"), and Nominal Defendant Hewlett-Packard Company ("HP").

For the reasons discussed below, Defendants' motions to dismiss will be granted with leave to amend.

# I. BACKGROUND

This is a shareholders' derivative action suit brought for the benefit of HP against Hurd, HP's former Chief Executive Officr ("CEO"), and the members of HP's Board of Directors (the "Board" or the "Directors"). See Consolidated Verified Shareholder Derivative Complaint ("Consolidated Complaint"), Docket No. 60. According to the Consolidated Complaint, Plaintiffs are shareholders of HP and were shareholders at the time of the alleged wrongdoing. Id. ¶¶ 8-11. HP is a Delaware corporation, headquartered in Palo Alto, California, which provides technology solutions to consumers, businesses, and institutions globally. Id. ¶ 12. Hurd, a citizen of California, served as HP's Chairman of the Board and CEO until his resignation on August 6, 2010. Id. ¶ 13. The ten individually named defendants are directors of HP. Id. ¶¶ 14–23. The Consolidated Complaint alleges the following facts:

Hurd and the other members of the Board, particularly the members of the HR and Compensation Committee (Babbio, Gupta, Hammergren, Hyatt, and Salhany) knew that Hurd's Employment Agreement had expired on March 29, 2009 and had not been renewed or extended. Id. ¶ 39. Nevertheless, on January 27, 2010, the Board filed with the SEC and disseminated to HP shareholders the 2010 Proxy Statement, which falsely represented several times that Hurd's Employment Agreement was still valid and in effect. Id. ¶ 39-40. These misstatements were material to shareholders' votes on, among other things, the election of Hurd for another term as HP's director and the approval of the Stock Incentive Plan, pursuant to which the Board sought and received authority to issue additional shares of stock for use in compensating HP's officers, directors, and employees, including Hurd. Id. ¶ 41.

In May 2010, HP received allegations that Hurd engaged in misconduct. Id. ¶ 48. Jodie Fisher, a former independent contractor at HP, claimed through her attorney that Hurd had sexually harassed her and which exposed Hurd and HP to liability. Id. ¶ 48. HP's Board initiated and oversaw a formal investigation upon learning of the charges. Id. ¶ 49. The investigation concluded that Hurd had violated HP's Standards of Business Conduct. Id. ¶ 51. Specifically, the investigation found that Hurd had a close personal relationship with Ms. Fisher; that Hurd failed to disclose that relationship to the Board of Directors; and that there were numerous instances where Hurd

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

submitted inaccurate expense reports that were intended to conceal or had the effect of concealing Hurd's personal relationship with Ms. Fisher. Id. ¶ 50.

On August 6, 2010, HP announced that Hurd had resigned his positions as HP's Chairman, CEO, and President, and that Hurd and HP had entered into a Separation Agreement and Release (the "Separation Agreement"). Id. ¶ 54; Decl. of Brian Danitz Ex. H, Docket No. 100-8. Under the terms of the Separation Agreement, Hurd was entitled to receive a cash severance payment and non-severance elements consisting of certain limited rights to previously granted equity awards. Consol Compl. ¶ 54.The Separation Agreement granted Hurd:

- a "Separation Amount" of $12,224,693 in cash;

- the right to exercise each of the outstanding stock options to acquire Company common stock that is vested and exercisable by Hurd during the Company's next open trading window, tentatively scheduled to commence August 23, 2010 and end September 7, 2010, in accordance with the terms of the Company's 2004 Stock Incentive Plan;

- the right to pro-rata vesting and settlement, at the same time and on the same terms as other HP employees, of 330,177 performance-based restricted stock units granted to Hurd on January 17, 2008 based on actual HP performance during the three-year performance period ending on October 31, 2010;

- the right to settlement on December 11, 2010 of 15,853 time-based restricted stock units granted to Hurd on December 11, 2009 at a price equal to the lesser of (a) the closing price of HP's common stock on August 6, 2010 or (b) the per share closing trading price of HP common stock on December 11, 2010;

- Hurd's unpaid base salary accrued up to the Separation Date; and

- vested amounts payable to Hurd under the Company's 401K plan.

Id. ¶ 54; Danitz Decl. Ex. H, Docket No. 100-8.

On September 6, 2010, Oracle announced that Hurd had joined Oracle as President and was to be named to Oracle's Board of Directors. Consol. Compl. ¶ 58. On September 7, 2010, HP filed an action against Hurd asserting claims for breach of contract and threatened misappropriation of trade secrets in connection with Hurd's employment at Oracle. Id. ¶ 61. On September 20, 2010, HP announced that it had resolved the HP/Hurd Action. As part of that resolution, Hurd agreed to forfeit his right to the 346,030 shares of HP stock that were included in the separation package. Id.

Plaintiffs allege that the Board had committed waste or otherwise breached its duties to HP by approving the Separation Agreement. Count I alleges that the Directors wasted corporate assets by

approving the Separation Agreement. Id. ¶¶ 80-82. Count II alleges that the Directors "breached their fiduciary duties of loyalty and good faith by awarding [Hurd] excessive and unwarranted severance payments and benefits, and by knowingly failing to inform themselves regarding all material information in making that decision." Id. ¶¶ 83-86. Count III asserts an unjust enrichment claim against Hurd. Id. ¶¶ 87-89. Count IV alleges that all defendants breached their fiduciary duties of loyalty and good faith by filing false and misleading statements regarding Hurd's Employment Agreement in HP's 2010 Proxy Statement. Id. ¶¶ 90-93. Count V alleges a similar claim under Section 14(a) of the Securities Exchange Act. Id. ¶¶ 94-98.

## II. LEGAL STANDARD

**A. Motion To Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Recitals of the elements of a cause of action and conclusory allegations are insufficient. Id.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 555, 570. In considering the sufficiency of a claim, the court must accept as true all of the factual allegations contained in the complaint. Id. at 555–56. However, the court is not required to accept as true legal conclusions cast in the form of factual allegations. Id. at 555.

If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

*United States District Court*
*For the Northern District of California*

1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered

with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (internal quotations omitted).

A shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts

on behalf of a corporation a claim belonging not to the shareholder, but to the corporation. Aronson

v. Lewis, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746

A.2d 244 (Del.2000)). Pursuant to Federal Rule of Civil Procedure 23.1, which governs derivative

actions, a shareholder's complaint must state with particularity "any effort by the plaintiff to obtain

the desired action from the directors" and "the reasons for not obtaining the action or not making

the effort." Fed. R. Civ. P. 23.1. Rule 23.1 imposes a higher standard of pleading than Rule 8(a).

**B. Choice of Law**

When a federal court sits in diversity, it looks to the forum state's choice of law rules to

determine the controlling substantive law. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Here,

because HP has its corporate headquarters and main place of business in Palo Alto, California, the

court applies California state law.

Pursuant to the "internal affairs" doctrine, which is generally followed by courts in

California, "the law of the state of incorporation governs liabilities of officers or directors to the

corporation or its shareholders." In re Sagent Tech., Inc., Derivative Litig., 278 F. Supp. 2d 1079,

1086 (N.D. Cal. 2003); see Cal. Corp. Code § 2116. Additionally, the demand requirements for a

shareholder derivative suit are determined by the law of the state of incorporation. Kamen v.

Kemper Financial Services, Inc., 500 U.S. 90, 96 (1991) ("the function of the demand doctrine . . .

is a matter of 'substance' not 'procedure'. . . . [Courts] must apply the demand futility exception as

it is defined by the law of the state of incorporation"); Potter v. Hughes, 546 F.3d 1051, 1054 n. 1

(9th Cir. 2008) ("the substantive demand requirement is an issue of state law"). Accordingly,

because HP is incorporated in Delaware, the court applies Delaware law to determine whether

demand is excused.

**C. Demand Futility**

Under Delaware law, "directors of a corporation and not its shareholders manage the

business and affairs of the corporation, and accordingly, the directors are responsible for deciding

5

1   whether to engage in derivative litigation." Levine v. Smith, 591 A.2d 194, 200 (Del. Ch. 1991)

2   (internal citation omitted) (overruled on other grounds by Brehm, 746 A.2d 244). Because directors

3   are empowered to manage or direct the business affairs of the corporation, a shareholder seeking to

4   bring a derivative action must first make a demand on that corporation's board of directors, giving

5   the board an opportunity to examine the alleged grievance to determine whether pursuing the

6   action is in the best interest of the corporation. Aronson, 473 A.2d at 812. The right of a

7   shareholder to prosecute a derivative suit is limited to situations where the shareholder has

8   demanded that the directors pursue the claim and they have wrongfully refused to do so or where

9   demand is excused because the directors are incapable of making impartial decisions regarding

10  such litigation. Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993) (quoting Levine, 591 A.2d at

11  200).

12          To prove that demand is excused, a shareholder must plead with particularity the reasons

13  why such demand would have been futile. Fed. R. Civ. P. 23.1. In general, Delaware law provides

14  two demand-futility tests, as set forth in Aronson, 473 A.2d 805, and Rales, 634 A.2d 927. When

15  the alleged wrong is the result of a business decision by the whole board of directors, a court

16  should employ the Aronson test, which evaluates whether, under the particularized facts alleged, a

17  reasonable doubt is created (1) that the directors are disinterested and independent, or (2) that the

18  challenged transaction was otherwise the product of a valid exercise of business judgment.

19  Aronson, 473 A.2d at 812. When, however, the board members who approved the challenged act

20  have since changed, or when the challenged act does not constitute a business decision by the

21  board, a court should employ the Rales test, which determines whether the particularized factual

22  allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of the

23  board as constituted at that time could have properly exercised its independent and disinterested

24  business judgment in responding to a demand. See Rales, 634 A.2d at 934.

### III. DISCUSSION

26  **A. Waste Of Corporate Assets Based On the Separation Agreement (Count I)**

27          Count I alleges that the Directors committed waste of corporate assets by approving the

28  Separation Agreement because the amount given to Hurd was excessive and one-sided. Id. ¶¶ 81-

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

82. Where a plaintiff challenges an affirmative board decision, demand is excused only if the plaintiff pleads particularized facts (1) creating a reasonable doubt that at least half the directors are disinterested and independent, or (2) creating a reasonable doubt that the transaction was the product of a valid exercise of business judgment. <u>Aronson</u>, 473 A.2d at 814.

**1. First Prong of the <u>Aronson</u> Test**

Plaintiffs allege that each Director is "incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action because he wasted corporate assets by approving the terms of the Separation Agreement, a transaction which was so one-sided that no business person of ordinary, sound judgment could conclude that the Company received adequate consideration." <u>See, e.g.</u>, Consol. Compl. ¶ 70. This conclusory allegation appears to allege that the Separation Agreement was not the result of a valid business decision and therefore the Directors are interested or lack independence. Plaintiffs, however, have made no allegation that any of the Directors had any personal interest in or derived any personal benefit from approval of Hurd's Separation Agreement.[1] The Consolidated Complaint also does not allege that any Director was beholden to Hurd such that he would have considered anything other than the Company's best interests in awarding a separation package.[2] <u>Aronson</u>, 473 A.2d at 816. Thus, Plaintiffs do not attack the disinterest or independence of the Directors, except to say that the Directors failed to exercise their business judgment in awarding the Separation Agreement to Hurd. Thus, the court finds that Plaintiffs have not met their burden under the first prong of the <u>Aronson</u> test.

**2. Second Prong of the <u>Aronson</u> Test**

Under the second prong of the <u>Aronson</u> test, Plaintiff must raise a reasonable doubt that the transaction is entitled to the protection of the business judgment rule. <u>In re Walt Disney Co. Derivative Litig.</u>, 825 A.2d 275, 286 (Del. Ch. 2003). The business judgment rule is "a

---

[1] A director is interested "'whenever divided loyalties are present, or a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders.'" <u>Rales</u>, 634 A.2d 927, 933, 936 (Del. 1993) (citation omitted).

[2] A director lacks independence when he is "so under [another party's] influence that [his] discretion would be sterilized." <u>Rales</u>, 634 A.2d at 936; <u>see Dunn</u>, 2008 WL 878424, at *6.

7

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." <u>Aronson</u>, 473 A.2d at 812. Under the business judgment rule, "directors are entitled to a presumption that they were faithful to their fiduciary duties . . . . [and] the burden is upon the plaintiff in a derivative action to overcome that presumption." <u>Beam v. Stewart</u>, 845 A.2d 1040, 1048–49 (Del. 2004). To rebut the business judgment rule presumption, "plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." <u>In re J.P. Morgan Chase & Co. S'holder Litig.</u>, 906 A.2d 808, 824 (Del. Ch. 2005) (quoting <u>In re Walt Disney Co.</u>, 825 A.2d at 286). "[A] decision made by a loyal and informed board will not be overturned by the courts unless it 'cannot be attributed to any rational business purpose.'" <u>Cede & Co. v. Technicolor, Inc.</u>, 634 A.2d 345, 361 (Del. 1993) (quoting <u>Sinclair Oil Corp. v. Levien</u>, 280 A.2d 717, 720 (Del. 1971)). In Delaware, corporations are empowered to "[a]ppoint such officers and agents as the business of the corporation requires and to pay or otherwise provide for them suitable compensation." 8 Del. C. § 122(5). A board's decision on executive compensation is "entitled to great deference." <u>Brehm</u>, 746 A.2d at 263.

**a. Honest Belief And Good Faith**

Plaintiffs insist that the complaint creates a reasonable doubt as to whether approving the Separation Agreement was the product of a valid exercise of business judgment because it pleads allegations showing waste.

"The standard for waste under the second prong of <u>Aronson</u> may be expressed as akin to <u>res ipsa loquitur</u>, and is difficult to meet . . . ." <u>Protas v. Cavanagh</u>, No. 6555–VCG, 2012 WL 1580969, at *9 (Del. Ch. May 4, 2012) (footnote omitted). Pleading waste requires a "showing that the board's decision was so egregious or irrational that it could not have been based on a vaild assessment of the corporation's best interests." <u>White v. Panic</u>, 783 A.2d 543, 554 n.36 (Del. 2001); <u>accord</u> <u>Sample v. Morgan</u>, 914 A.2d 647, 669-70 (Del. Ch. 2007) (Waste entails "a transaction that is on terms so disparate that no reasonable person acting in good faith could conclude the transaction as in the corporation's best interest."). Indeed, the challenged transaction

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

must reflect "an exchange of corporate assets for consideration so disproportionately small" that it effectively could be characterized as a mere gift serving no corporate purpose. Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch. 1997). "Where, however, the corporation has received 'any substantial consideration' and where the board has made 'a good faith judgment that in the circumstances the transaction was worthwhile,' a finding of waste is inappropriate, even if hindsight proves that the transaction may have been ill-advised." Protas, 2012 WL 1580969, at *9 (quoting Vogelstein, 699 A.2d at 336). "This is obviously an extreme test, very rarely satisfied by a shareholder plaintiff." Steiner v. Meyerson, Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

Defendants argue that HP received valuable consideration in the Separation Agreement referenced in the Consolidated Complaint in form of (1) a full release of claims against HP ("Release"); (2) an extension of certain protective covenants, including those concerning the use or disclosure of HP's trade secrets and those prohibiting solicitation of HP's customers, employees and suppliers; (3) Hurd's cooperation post-employment with respect to transition matters, requests for information, and in any investigation or review; and (4) Hurd's agreement to refrain from disparaging HP, its affiliates, subsidiaries, officers or directors. See HP Motion at 5-7; Opp'n at 17, Docket No. 109. Additionally, Defendants argue that Hurd's compensation was not excessive because the amount of Hurd's cash payment was determined by a formula set out in HP's Severance Plan and the remainder of the benefits consisted only of limited extensions of time to exercise previously earned equity awards.

Plaintiffs argue that the Board received nothing in exchange for the large amounts given to Hurd in the Separation Agreement. Specifically, Plaintiffs argue that Hurd's release of claims was worthless because there is no evidence that Hurd even had any claims against HP to release, and that Hurd's agreement to extend his existing obligations under the Confidentiality Agreement, including non-compete and non-solicitation provisions, is not adequate consideration in exchange for tens millions of dollars in severance. Additionally, Defendants were under no contractual obligations to pay Hurd under the Severance Plan because the Severance Plan applies only when an

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

1   employee is involuntarily terminated without case and does not apply when an employee resigns,

2   as Hurd did.

3         The Consolidated Complaint sufficiently alleges that HP was not required to offer Hurd a

4   severance. For example, it alleges that Hurd resigned, had no employment agreement with HP, and

5   thus no contractual right to severance, when he left. Although the Board <u>could</u> have elected to pay

6   Hurd nothing, determining whether it <u>should</u> have done so, or whether making the deal it did

7   constitutes waste, involves a broader legal analysis. <u>Zucker v. Hewlett</u>, C.A. No. 6014-VCP, 2012

8   WL 2366448, *8 (Del. Ch. June 21, 2012) (evaluting a nearly identical claim regarding Hurd's

9   Separation Agreement and finding that the plaintiff had failed to satisfy his burden under <u>Aronson</u>

10  to show demand futility as to his waste claims).

11        While "the discretion of directors in setting executive compensation is not unlimited," <u>In re</u>

12  <u>Citigroup</u>, 964 A.2d at 138, "[i]t is the essence of business judgment for a board to determine if 'a

13  particular individual warrant[s] large amounts of money, whether in the form of current salary or

14  severance provisions,'" <u>Brehm</u>, 746 A.2d at 263 (second alteration in original) (quoting <u>In re The</u>

15  <u>Walt Disney Co. Deriv. Litig.</u>, 731 A.2d at 362). The "outer limit" necessary to sustain a claim of

16  waste is "executive compensation . . . so disproportionately large as to be unconscionable," <u>Id.</u> at

17  262 n.56, but a finding of waste is inappropriate "[s]o long as there is some rational basis for

18  directors to conclude that the amount and form of compensation is appropriate and likely to be

19  beneficial to the corporation," <u>Steiner v. Meyerson</u>, Civ. A. No. 13139, 1995 WL 441999, at *8

20  (July 19, 1995).

21        Plaintiffs' argument that the Release of claims was illusory because there was no indication

22  that Hurd had any claim against HP fails. Plaintiffs' argument ignores that if the Board had not

23  negotiated the terms of Hurd's departure and instead had fired him for cause or denied him

24  severance, Hurd could have sued, bringing a claim for wrongful termination or violation of the

25  Severance Plan. <u>See</u> <u>Zucker</u>, 2012 WL 236648, at *8 (finding Release had some value because had

26  the Board fired Hurd for cause, it may have faced litigation). The Release protected against the

27  expense of litigation and negative publicity resulting from having to defend against such a claim.

28

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

1   That is, even if the release was worth relatively little, Plaintiff overstates his case to say it was

2   worthless. See id.

3          Plaintiffs' argument that Hurd's agreement to extend his confidentiality, non-compete and

4   non-solicitation covenants was completely hollow also fails. The Separation Agreement included a

5   doubling of the duration of the protective covenants in Section 7 of the Confidentiality Agreement,

6   which included a non-compete and non-solicitation of employees, customers, and suppliers. Danitz

7   Decl. Ex. H at 2. The lawsuit filed by HP after Hurd took a position at Oracle demonstrates the

8   value of this consideration. Although the Confidentiality Agreement was still in force at the time

9   that Hurd joined Oracle, Hurd's decision to accept employment by HP's competitor underscores

10  the value of the extended protections in the Separation Agreement. The Separation Agreement

11  prevents Hurd from engaging in similar conduct after the Confidentiality Agreement ends.

12         Finally, Plaintiffs have failed to demonstrate that the benefits and cash payment in the

13  Separation Agreement were excessive. "[I]n the context of executive compensation, Delaware

14  courts recognize an exception to the general rule barring retroactive consideration. Compensation

15  given in consideration for previously completed performance is not improper '[w]here the amount

16  awarded is not unreasonable in view of the services rendered.'" Underbrink v. Warrior Energy

17  Servs. Corp., 2008 WL 2262316, at *10 n. 92 (Del. Ch. May 30, 2008) (second alteration in

18  original) (quoting Zupnick v. Goizueta, 698 A.2d 384, 388 (Del. Ch. 1997)). Here, Plaintiffs do not

19  allege that HP suffered significant losses during Hurd's tenure as CEO or that he otherwise was an

20  ineffectual executive. Compare In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 137–38

21  (Del. Ch. 2009) (challenging $68 million severance "to a departing CEO whose failures as CEO

22  were allegedly responsible, in part, for billions of dollars of losses") and Brehm, 746 A.2d at 249

23  ("it appears from the Complaint that . . . the compensation and termination payout for Ovitz were

24  exceedingly lucrative, if not luxurious, compared to Ovitz' value to the Company") with Aug. 6

25  Press Release, Danitz Decl. Ex. G. at 1–2, Docket No. 100-7 ("[The Board] recognizes the

26  considerable value that [Hurd] has contributed to HP over the past five years in establishing us as a

27  leader in the industry. . . . The departure was not related in any way to the company's operational

28  performance or financial condition, both of which remain strong."). Under such circumstances, at

11

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

**United States District Court**
For the Northern District of California

1    least some portion of Hurd's severance could represent "reasonable" compensation for his

2    successful past performance. See Zucker, 2012 WL 236648, at *9.

3        This possibility further undermines Plaintiff's waste claim, which effectively requires a

4    showing that the Severance Agreement constitutes an "egregious or irrational" exchange of

5    corporate assets "that could not have been based on a valid assessment of the Corporation's best

6    interests." White, 783 A.2d at 554 n. 36. Additionally, denying Hurd any severance despite issuing

7    a statement recognizing the "considerable value that [he] has contributed to HP" could have

8    undermined HP's efforts to attract outside executive talent. Danitz Decl. Ex. G; see Zucker, 2012

9    WL 236648, at *9.

10        As discussed by the Delaware Court of Chancery in Zucker, having found that the

11   Separation Agreement reflects at least some element of bilateral exchange and that there were

12   rational bases for the Board to agree to it, Plaintiffs' waste claim is reduced to their allegations that

13   the payments and benefits Hurd received, valued at approximately $53 million (Consol Compl. ¶¶

14   53-54) was just too much. "[T]he size of executive compensation for a large public company in the

15   current environment often involves large numbers," Brehm, 746 A.2d at 259 n. 49, and "amount

16   alone is not the most salient aspect of director compensation" for purposes of a waste analysis,

17   Steiner, 1995 WL 441999, at *8. Without question, the amount of Hurd's severance may appear

18   extremely rich or altogether distasteful to some. But, "[t]he waste doctrine does not . . . make

19   transactions at the fringes of reasonable decision-making its meat." Protas, 2012 WL 1580969, at

20   *10. Rather, "[t]he value of assets bought and sold in the marketplace, including the personal

21   services of executives and directors, is a matter best determined by the good faith judgments of

22   disinterested and independent directors, men and women with business acumen appointed by

23   shareholders precisely for their skill at making such evaluations." In re INFOUSA, Inc.

24   Shareholders Litig., 953 A.2d 963, 984 (Del. Ch. 2007). Thus, allegations that the payments and

25   benefits Hurd received were valued at approximately $53 million are alone insufficient to

26   demonstrate waste.

27        In sum, because the Consolidated Complaint demonstrates that Hurd provided HP with

28   consideration in the Separation Agreement and fails to plead facts showing that there is no

12

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

reasonable basis for the amount of benefits provided to Hurd, Plaintiffs have failed to show that approving the Separation Agreement was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests. Thus, Plaintiffs have failed to plead particularized facts sufficient to raise a reason to doubt that the approval of the Separation Agreement was taken honestly and in good faith.

**b. Informed Basis**

Plaintiffs also fail to plead any facts raising a reasonable doubt that the Board acted on an informed basis in deciding to enter into the Separation Agreement. The Consolidated Complaint alleges that the Board acted precipitously and without adequate time because the Separation Agreement was signed in less than 24 hours after Hurd's resignation was announced. Id. ¶ 57. Any inference drawn from these allegations, however, is offset by other allegations showing the Board engaged in an investigation and deliberation regarding Hurd's termination. For example, when the Board learned of Ms. Fisher's accusations against Hurd, it initiated and oversaw a formal investigation of the allegations, which outside legal counsel and the General Counsel's office conducted. Id. ¶¶ 46, 49. The Board's investigation made a number of factual findings and conclusions. Id. ¶¶ 46, 50-51. The investigation concluded that there was no violation of HP's sexual harassment policy, but did find violations of HP's Standards of Business Conduct. Id. ¶¶ 46, 51. HP announced Hurd's resignation on August 6, 2010, a number of weeks after Ms. Fisher first asserted her accusations. Id. ¶ 46.

The Consolidated Complaint's assertion that the Board failed to inform itself of relevant facts before entering the Separation Agreement is conclusory and contradicted by the facts set forth in the Consolidated Complaint. Thus, Plaintiffs have not presented facts showing that the Board's investigation and deliberations resulted in an uninformed decision. See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Fed. National Mortgage Association, 534 F.3d 779, 792 (D.C. Cir. 2008) ("The complaint itself acknowledges that the termination decision was made in a series of board meetings held over several days"); In re Goldman Sachs Group, Inc. Shareholder Litig., No. 5215, 2011 WL 4826104, at *16 (Del. Ch. Oct. 12, 2011) ("[t]he business judgment rule . . . only requires the board to reasonably inform itself; it does not require perfection or the

13

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   consideration of every conceivable alternative."). Thus, Plaintiffs have not pleaded particularized

2   facts sufficient to raise a reason to doubt that the board was adequately informed in making the

3   decision.

4       The Consolidated Complaint therefore fails to raise a reasonable doubt that the Board's

5   decision on the amount of severance it would agree to pay Hurd was the product of a valid exercise

6   of business judgment. Thus, Plaintiffs has failed to satisfy their burden under the second prong

7   <u>Aronson</u> to plead demand futility as to his waste claim. Accordingly, Defendants' motions to

8   dismiss Count I are GRANTED with leave to amend.

9   **B. Breach Of Fiduciary Duty Based On Separation Agreement (Count II)**

10      The same foregoing analysis under the <u>Aronson</u> test applies to Count II, which asserts a

11   breach of fiduciary duty claim based on the allegedly excessive and unwarranted Separation

12   Agreement. Accordingly, Defendants' motions to dismiss Count II are GRANTED with leave to

13   amend.

14   **C. Unjust Enrichment (Count III)**

15      Plaintiff also assert a claim for unjust enrichment against Hurd. Plaintiffs claim Hurd was

16   unjustly enriched by his receipt and retention of the excessive and unwarranted benefits pursuant to

17   the Separation Agreement. The same foregoing analysis under the <u>Aronson</u> test applies to Count

18   III. Thus, Defendants' motions to dismiss the Consolidated Complaint for failure to state a claim

19   are GRANTED with leave to amend.

20   **D. Section 14(a) Of The Securities Exchange Act (Count V)**

21      Plaintiffs also assert a federal claim under Section 14(a) of the Securities Exchange Act

22   because HP's Proxy Statement misstated that Hurd's employment contract under his Employment

23   Agreement was still in effect, although it had expired in March 2009. <u>Id.</u> ¶¶ 3, 39.

24      Where a plaintiff does not challenge an affirmative board decision, the <u>Aronson</u> test does

25   not apply. Instead, the analysis is whether plaintiff has pleaded "particularized fact[s that] create a

26   reasonable doubt that, as of the time the complaint is filed, the board of directors could have

27   properly exercised its independent and disinterested business judgment in responding to a

28   demand." <u>Rales</u>, 634 A.2d at 934. Plaintiffs argue they have pleaded demand futility by the

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

1    assertion that the Directors are interested in that they face a "substantial likelihood of liability" for

2    disclosure violations. Id. ¶¶ 70-79.

3        In order to state a claim under Section 14(a), a plaintiff must allege that (1) defendants

4    made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of

5    mind; and (3) that the proxy statement was the transactional cause of harm of which plaintiff

6    complains. In re Zoran Corp. Derivative Litig., 511 F. Supp. 2d 986 (N.D. Cal. 2007). Plaintiff

7    must also plead that the misstatement or omission was an essential link in the accomplishment of

8    the proposed transaction. Id. "An omitted fact or misrepresentation in a proxy statement is material

9    when there is a substantial likelihood that a reasonable shareholder would consider it important in

10   deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976).

11       Defendants argue that the Consolidated Complaint fails to plead facts showing that the

12   alleged misrepresentation in the 2010 Proxy Statement that Hurd's Employment Agreement was

13   still valid and in effect was material to any shareholder vote. Plaintiffs make three arguments

14   regarding whether the Complaint alleges that the misrepresentation was material.

15       First, Plaintiffs claim that the shareholders would have found the statements material in

16   determining whether to reelect the Directors on the Compensation Committee because it would

17   have demonstrated that those members were shirking their duties because Hurd was no longer

18   contractually obligated to serve the Company. Second, Plaintiffs claim that shareholders would

19   have found the statements material in reelecting Hurd as a director because "he no longer needed to

20   comply with the obligations" under the Employment Agreement. Opp'n at 26-27. Both these

21   arguments fail, however, because Plaintiffs have not identified these relevant contractual

22   obligations or otherwise alleged facts indicating these obligations would affect a shareholder's

23   decision to vote for Hurd as a director. According to the Employment Agreement attached to the

24   Consolidated Complaint, Hurd was an "at will" employee with or without the Employment

25   Agreement. Consol. Compl. Ex. A ¶ 2. There are no allegations showing that the absence of an

26   Employment Agreement had any impact on Hurd's or the HP's performance or any other

27   allegations indicating that  a reasonable shareholder would have considered the Employment

28   Agreement important in deciding how to vote.

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

1          Finally, Plaintiffs argue that shareholders would have found it material in approving the

2    stock plan that Hurd was no longer limited by the Employment Agreement with regard to the

3    number of stock options he would receive. Opp'n at 27. Plaintiffs, however, plead no facts

4    demonstrating that shareholders would consider a difference in the amount of options Hurd was

5    entitled to receive in determining whether to vote for the Stock Incentive Plan. Thus, the

6    Consolidated Complaint fails to plead facts showing the misrepresentation in the 2010 Proxy

7    Statement was material.

8          Plaintiffs also fail to plead the misrepresentation was the cause of any harm. Plaintiffs do

9    not cite any allegations in their Consolidated Complaint alleging a link between the

10   misrepresentation and any harm. They argue in their opposition, however, that the Consolidated

11   Complaint indicates (1) that "by falsely reporting that Hurd's Employment Agreement was still

12   valid and in effect, defendants Babbio, Gupta, Hammergren, Hyatt and Salhany, were able to

13   maintain their positions on the Board, which ultimately resulted in the approval of the Severance

14   Agreement which harmed HP by wasting its assets[; and (2) that] HP was also harmed by the

15   approval of the Stock Incentive Plan, which represents a direct and continuing waste of HP's

16   valuable corporate assets." Opp'n at 29:18-23.

17         Plaintiffs' first alleged link fails because the mere fact that but for their reelection the

18   directors could not have approved the Separation Agreement is insufficient to allege transaction

19   causation under Section 14(a). As the Third Circuit noted in rejecting a similar argument:

20         "[T]he mere fact that omissions in proxy materials, by permitting directors to win re-
           election, indirectly lead to financial loss through mismanagement will not create a
21         sufficient nexus with the alleged monetary loss. Rather, damages are recoverable under
           Section 14(a) only when the votes for a specific corporate transaction requiring
22         shareholder authorization, such as a corporate merger, are obtained by a false proxy
           statement, and that transaction was the direct cause of the pecuniary injury for which
23         recovery is sought."

24   Gen. Elec. Co. by Levit v. Cathcart, 980 F.2d 927, 933 (3rd Cir. 1992). Plaintiffs' second alleged

25   link also fails because Plaintiffs have not alleged facts pertaining to the Stock Incentive Plan

26   resulting in waste.  Thus, the Consolidated Complaint fails to plead facts showing an essential link

27   between the proxy and any harm alleged.

28

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

Because the Consolidated Complaint lacks facts showing materiality and that the misrepresentation caused any harm, the Consolidated Complaint fails to plead facts showing that the Board faces a substantial likelihood of liability, and thus a reasonable doubt that the Directors could have been independent, that would excuse demand with respect to the Section 14(a) claim. Accordingly, Defendants' motions to dismiss Count V are GRANTED with leave to amend.

**E. Breach of Fiduciary Duty Based On HP'S 2010 Proxy Statement (Count IV)**

Finally, Plaintiffs allege that each Defendant breached their fiduciary duties by knowingly filing and disseminating to HP's shareholders the false 2010 Proxy Statement, which contained false and misleading statements regarding Hurd's Employment Agreement. Consol. Compl. ¶ 92. Plaintiffs argue that the pre-suit demand is excused with respect to this claim because five of the ten directors (Babbio, Gupta, Hammergren, Hyatt, and Salhany) face a substantial likelihood of liability for breaching their fiduciary duty of candor relating to their violation of Section 14(a). Opp'n at 30. Because the misrepresentation in the proxy statement does not constitute a business decision by the board, the court applies again the Rales test rather than the Aronson test.

In assessing a duty of disclosure claim, Delaware courts apply the same standard of materiality used by federal courts for Section 14(a) claims. See Stroud v. Grace, 606 A.2d 75, 84 (Del. 1992) (noting that Delaware law uses the same materiality standard announced in TSC Indus. for evaluating duty of disclosure claims). Delaware law also requires "the challenged disclosure to have a connection to the request for shareholder action." Malone v. Brincat, 722 A.2d 5, 12 (Del. 1998). As discussed above, Plaintiffs failed to plead facts showing the materiality of the alleged misstatements about Hurd's Employment Agreement or a connection between the alleged misstatement and the shareholder vote. Additionally, although Plaintiffs allege that the Directors breached their fiduciary duties by filing and disseminating the false and misleading proxy statement, see, e.g., Consol. Compl. ¶ 71. Plaintiffs do not allege that any Director prepared these financial statements or that they were directly responsible for the misstatements. See In re Accuray, Inc. Shareholder Derivative Ligitation, 757 F. Supp. 2d 919, 934 (N.D. Cal. 2010) (dismissing fiduciary duty claim where "Plaintiffs do not allege that any member . . . prepared these financial

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
For the Northern District of California

statements"). Thus, Plaintiffs have not pleaded facts showing that the misrepresentation violated the Directors' duty of disclosure.

Thus, the Consolidated Complaint fails to plead facts showing that the Board faces a substantial likelihood of liability that would excuse demand with respect to the claim for breach of fiduciary duty based on the disclosures in the 2010 Proxy Statement. Accordingly, Defendants' motions to dismiss Count IV are GRANTED with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and Rule 23.1 are GRANTED with leave to amend. Plaintiffs shall file any amended complaint within 30 days of the date of this Order.

The court schedules this case for a Case Management Conference on **November 30, 2012.** The parties shall file a Joint Case Management Conference on or before **November 21, 2012.** IT IS SO ORDERED

Dated: September 25, 2012

EDWARD J. DAVILA
United States District Judge

18

Case No.: 5:10-cv-3608 EJD
ORDER GRANTING MOTIONS TO DISMISS